AF Approval __JMH/NA_____                    Chief Approval __MPF/CB_____

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                                    Case No. 6:22-cr-205-PGB-DCI

CHRISTOPHER TROY PHERAI-BOGEAJIS

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, CHRISTOPHER TROY PHERAI-BOGEAJIS, and the attorney for the defendant, Roger L. Weeden, Esq., mutually agree as follows:

**A.**     **Particularized Terms**

    1.     Counts Pleading To

The defendant shall enter a plea of guilty to Counts Four and Five of the Indictment. Count Four charges the defendant with conspiracy to possess with intent to distribute and to distribute controlled substances, in violation of 21 U.S.C. § 846. Count Five charges the defendant with possession of firearms in furtherance of the drug conspiracy charged in count court and aiding and abetting the same, in violation of 18 U.S.C. § 924(c)(1)(A)(i), and aiding and abetting the same in violation of 18 U.S.C. § 2.

Defendant's Initials ___CX___

2.   <u>Maximum Penalties</u>

Count Four carries a mandatory minimum sentence of five years imprisonment and a maximum sentence of 40 years imprisonment, a fine of up to $5,000,000, supervised release of four years to life, and a $100 special assessment.

Count Five is punishable by a mandatory minimum term of imprisonment of five years to run consecutive to the sentence of imprisonment imposed on any other Count, a fine of up to $250,000, supervised release of at least 3 years, and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3.   <u>Elements of the Offense</u>

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count Four are:

<u>First</u>:     two or more people in some way agreed to try to accomplish a shared and unlawful plan to possess or distribute a controlled substance;

<u>Second</u>:   the Defendant knew the unlawful purpose of the plan and willfully joined in it; and

Defendant's Initials _CR_                    2

<u>Third</u>:   the object of the unlawful plan was to possess with the intent to distribute or to distribute a controlled substance.

The elements of Count Five are:

<u>First</u>:   the Defendant committed the drug trafficking crime charged in Count Four of the indictment; and

<u>Second</u>:   that the Defendant knowingly possessed, or aided and abetted the possession of, a firearm in furtherance of that crime, as charged in the indictment.

4.   *Alleyne v. United States and Apprendi v. New Jersey*

Under *Alleyne v. United States*, 570 U.S. 99 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the defendant is subject to a mandatory minimum sentence of 5 years' imprisonment and a maximum sentence of 40 years imprisonment as to Count Four because the following facts have been admitted by the defendant and are established by this plea of guilty:

- The defendant conspired to distribute and possess with intent to distribute 40 grams or more of a mixture and substance containing a detectible amount of fentanyl, a Schedule II controlled substance.

5.   <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States

Defendant's Initials _C&_          3

Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.   <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant

Defendant's Initials  C R                              4

agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

    7.   <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

    8.   <u>Forfeiture of Assets</u>

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 924(d)(1), 21 U.S.C. § 853, and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.

The assets to be forfeited specifically include, but are not limited to, the following:

Defendant's Initials  CR        5

- A Glock 45 9 mm handgun (Serial # AGBU778), seized from the vehicle with PHERAI-BOGEAJIS on May 16, 2022;

- A Silver Ruger LCR revolver (Serial #1540-74049), seized from the vehicle with PHERAI-BOGEAJIS on May 16, 2022;

- 22 rounds of 9 mm ammunition and 5 rounds of .357 caliber ammunition, seized from the vehicle with PHERAI-BOGEAJIS on May 16, 2022; and

- $7,720 in currency seized from PHERAI BOGEAJIS's fanny pack and $67 seized from PHERAI BOGEAJIS's pockets on May 16, 2022.

The firearms and ammunition were possessed in furtherance of the drug trafficking crime charged in Count Four and were involved in the offense charged in Count Five, and the currency was proceeds of the drug trafficking offense charged in Count Four.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not

Defendant's Initials _CR_                    6

properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.  Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

Defendant's Initials  _CR_                    7

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at

Defendant's Initials _____               8

its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. The Defendant expressly consents to the forfeiture of any substitute assets sought by the Government. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including satisfaction of any preliminary order of forfeiture for proceeds.

Defendant's Initials _CR_                          9

9.    <u>Notice of Possibility of Remand Upon Entry of Guilty Plea</u>

The defendant is advised that a finding of guilt will subject the defendant to the mandatory detention provision of 18 U.S.C. § 3143(a)(2) and that the defendant will be remanded to the custody of the U.S. Marshals pending sentencing unless 18 U.S.C. § 3143(a)(2)(A) & (B) or 18 U.S.C. § 3145(c) applies.

**B.    Standard Terms and Conditions**

1.    <u>Restitution, Special Assessment and Fine</u>

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

Defendant's Initials _CR_                    10

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.  To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check, or money order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the

Defendant's Initials _CR_                    11

count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

    5.   <u>Financial Disclosures</u>

        Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank

Defendant's Initials   _CR_          12

records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may

Defendant's Initials _____                    13

make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.   <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.   <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring

defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

    9.   <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

    10.   <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against

Defendant's Initials ___CW___          15

compulsory self-incrimination, and the right to compulsory process for the
attendance of witnesses to testify in defendant's defense; but, by pleading guilty,
defendant waives or gives up those rights and there will be no trial.  The defendant
further understands that if defendant pleads guilty, the Court may ask defendant
questions about the offense or offenses to which defendant pleaded, and if defendant
answers those questions under oath, on the record, and in the presence of counsel (if
any), defendant's answers may later be used against defendant in a prosecution for
perjury or false statement.  The defendant also understands that defendant will be
adjudicated guilty of the offenses to which defendant has pleaded and, if any of such
offenses are felonies, may thereby be deprived of certain rights, such as the right to
vote, to hold public office, to serve on a jury, or to have possession of firearms.

    11.   <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty.  The
defendant certifies that defendant does hereby admit that the facts set forth in the
attached "Factual Basis," which is incorporated herein by reference, are true, and
were this case to go to trial, the United States would be able to prove those specific
facts and others beyond a reasonable doubt.

    12.   <u>Entire Agreement</u>

This plea agreement, including Exhibit A, constitutes the entire
agreement between the government and the defendant with respect to the

Defendant's Initials ___CX___      16

aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.    Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _27_ day of _June_, 2023.

Respectfully Submitted,

ROGER B. HANDBERG
United States Attorney

_____
CHRISTOPHER TROY
PHERAI-BOGEAJIS
Defendant

_____
Dana E. Hill
Assistant United States Attorney

_____
Roger L. Weeden, Esq.
Attorney for Defendant

_____
Michael P. Felicetta
Assistant United States Attorney
Chief, Orlando Division

Defendant's Initials _____

17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                             Case No. 6:22-cr-205-PGB-DCI

CHRISTOPHER TROY PHERAI-BOGEAJIS

<u>PERSONALIZATION OF ELEMENTS</u>

For Count Four, between on or about March 25, 2022, and continuing through on or

about December 14, 2022:

<u>First</u>:      Did two or more people in some way agree to try to accomplish a
            shared and unlawful plan to possess or distribute a controlled
            substance?

<u>Second</u>:    Did you know the unlawful purpose of the plan and willfully join in
            it?

<u>Third</u>:      Was the object of the unlawful plan was to possess with the intent to
            distribute 40 grams or more of fentanyl?

For Count Five, on or about May 16, 2022:

<u>First</u>:      Did you commit the drug trafficking crime charged in Count Four of
            the indictment?

<u>Second</u>:    Did you knowingly possess or aid and abet others in the possession
            of a firearm in furtherance of that crime, as charged in the
            indictment?

Defendant's Initials _____            18

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                           Case No. 6:22-cr-205-PGB-DCI

CHRISTOPHER TROY PHERAI-BOGEAJIS

FACTUAL BASIS

In 2021, the DEA initiated an investigation into drug trafficking and money

laundering activities in the Orlando area and the FBI initiated an investigation into

unlawful dealing in firearms in the same area.  In the course of that investigation, the

DEA and the FBI discovered that Bengie Emannual SILVA RAMOS, Brian Alexis

PAGAN-DIAZ, Christopher PHERAI BOGEAJIS, Kailash MAHARAJ and

numerous other individuals were involved in the distribution of controlled

substances, including cocaine and fentanyl, and unlawful dealings in firearms,

including fully automatic machine guns. Law enforcement obtained court-ordered

authorization to monitor multiple telephones used by members of the conspiracy and

conducted surveillance of their activities. That investigation yielded evidence

demonstrating the following true facts about that network and Defendant PHERAI

BOGEAJIS's involvement in it:

Pursuant to court-ordered authorization, the FBI and DEA intercepted

communications on 407-205-5893 (Target Telephone-6) starting in May 4, 2022.

Defendant's Initials _CA_                    19

SILVA-RAMOS regularly communicated on Target Telephone-6 with PHERAI BOGEAJIS and MAHARAJ on Target Telephone-6 about the distribution of controlled substances.

*__March 25, 2022 Sale of Pills__*

Starting on March 24, 2022, SILVA-RAMOS, using Target Telephone-6, arranged with a source to sell controlled substance pills. SILVA-RAMOS vouched for their quality: "they are well done. When you see it you are going to tell me that they are not fake." On March 25, 2022, the source called SILVA-RAMOS to purchase the controlled substance pills that same day. SILVA-RAMOS informed the source that he was unavailable but would send someone else in his place. SILVA-RAMOS instructed the source to meet with this unknown person in a grocery store parking lot. Later that day, the source arrived in the location and continued to converse with SILVA-RAMOS on Target Telephone-6 about the pending transaction. During these conversations, the source also spoke with the third party who would be consummating the transaction on (xxx) xxx-3930, an individual later identified as PHERAI-BOGAJIS. When the source went as instructed to the Mercedes-Benz PHERAI-BOGAJIS was driving, PHERAI-BOGEAJIS distributed pills to the source with the understanding that they would be paid for in the future. These pills were blue in color and were pressed to resemble legitimately manufactured pharmaceutical controlled substance pills. These pills were tested at

Defendant's Initials  C̶R̶                20

the DEA laboratories and were determined to be 215 pills containing 17.11 grams of a substance containing a detectible amount of fentanyl.

### *April 1, 2022 Sale of Pills*

On April 1, 2022, a source contacted Silva Ramos on Target Telephone-6 about purchasing another 200 pills and told SILVA-RAMOS that he had the money for new pills as well as previously distributed pills.  Later that day, SILVA-RAMOS and the source spoke again.  SILVA-RAMOS indicated he had spoken to "the guy, and he said to give him a break because he is going to count and see how many he has there and give you what he has." The source responded, "just let me know, I have the money." As the source was departing for the deal, SILVA-RAMOS confirmed that the deal was finalized for a total $1,600.  The source met with PHERAI-BOUGEAJIS who distributed pills to him in a manner similar to March 25, 2022 and the source provided $1,600 as payment for both transactions.  These pills were tested at the DEA laboratories and were determined to be 488 pills containing 38.08 grams of a substance containing a detectible amount of fentanyl.

### *Conversations on May 12, 2022*

On May 7, 2022 at approximately 1:47 p.m., SILVA-RAMOS received a call from PHERAI-BOGEAJIS.  SILVA-RAMOS told PHERAI-BOGEAJIS: "Yea no my uncles going to do some things and will be back Monday, Tuesday at the latest, so he'll be back." During this call, PHERAI-BOGEAJIS said "I need to get that in

motion bro I got this K pack play man." The "K pack" referred to a package of 1,000 pills.

On or about May 8, 2022, at approximately 10:04, PHERAI-BOGEAJIS asked SILVA-RAMOS "Everything good with your unc?" SILVA-RAMOS replied "Yea, he sold 500 of em already." PHERAI-BOGEAJIS said "just wanted to make sure everything was going good if its been hitten smackers," referring to the quality of the drugs provided.  SILVA-RAMOS stated "Yea they're not. There are no complaints, just waiting to meet his boy tomorrow and then he's sliding back."

In these conversations, SILVA-RAMOS was coordinating the sale of at least 500 pills between PHERAI-BOGEAJIS and SILVA-RAMOS's uncle.

### *May 16, 2022 Sale of Cocaine and Firearms*

On May 9, 2022, PHERAI BOGEAJIS texted with MAHARAJ about an individual named "Kilo," a contact in PHERAI BOGEAJIS's phone. In those texts, MAHARAJ responded he would be ready for "Kilo" by Thursday (May 12, 2022).

On May 14, 2022, PHERAI BOGEAJIS texted SILVA-RAMOS "save the Glock for me." On May 15, 2022, at approximately 4:34 p.m., PHERAI BOGEAJIS asked SILVA-RAMOS (TT6) to have his uncle send "bread," referring to a payment for previously distributed pills. PHERAI BOGEAJIS asked SILVA-RAMOS "You got those ARs for me? . . . I need one bro and I need you to do your thing to it cause

my man said he wants one too he said he wanted two glocks and one of those." SILVA-RAMOS replied "Imma see if I can have that ready for you tomorrow."

At approximately 4:37 p.m., SILVA-RAMOS, on Target Telephone-6, called PHERAI BOGEAJIS. PHERAI BOGEAJIS asked "can you please give me an AR though?" SILVA-RAMOS replied "N**** Imma have two of them for you tomorrow bro, but I can't . . ." PHERAI BOGEAJIS replied "Thank you, please buy me one, cause I got this n**** [U/I] bro, and I'm about to bust his head." Then SILVA-RAMOS said "Alright, so, two for tomorrow then." PHERAI BOGEAJIS said "and I need you to give me the trigger. I don't need that little cheap s*** inside bro, I'm gonna bust his head. So call your boy and ask how much for the trigger." SILVA-RAMOS replied "Trigger is 450 bro." PHERAI BOGEAJIS says "N****, 4-50?" SILVA-RAMOS replied "yeap bro, and theres nothin around dude, you can ask Kyle, everybody that's how much it costs, bro." PHERAI BOGEAJIS said "a trigger." SILVA-RAMOS replied "N**** a real trigger, yes a full auto."

On May 16, 2022, at approximately 3:02 p.m., SILVA-RAMOS called MAHARAJ on (xxx) xxx-8488, and said "get ready now" and told him "I'm introducing you to one of my plugs."  At 6:30 p.m., the FBI surveilled SILVA-RAMOS at a club on Orange Blossom Trail.  At 7:30 p.m., PHERAI BOGEAJIS arrived at the club. At 10:01 p.m., SILVA-RAMOS called MAHARAJ again and said "Imma kill you bro . . . hurry up and come over here." MAHARAJ said "I

Defendant's Initials __CR__                23

thought you left?" SILVA-RAMOS replied "No they're here, n**** me and Chris

has been entertaining them for like almost an hour and a half." SILVA-RAMOS

said "You told me you were coming straight over here." MAHARAJ said "I know

but I had to meet my boy here."

At 10:51 p.m., MAHARAJ and PHERAI BOGEAJIS exited the strip club.

MAHARAJ was driving the vehicle registered to a family member and the Orange

County Sheriff's Office conducted a traffic stop. A search of the vehicle revealed four

kilogram bricks of cocaine, a new Glock case with a Glock 45 9 mm handgun (Serial

# AGBU778) on the passenger side floorboard, a Silver Ruger LCR revolver (Serial

#1540-74049) in the driver side door, six magazines, 22 rounds of 9 mm ammunition

and 5 round of .357 caliber ammunition; $7,720 in currency in PHERAI BOGEAJIS

fanny pack and another $67 in his pockets; and $6,615 in currency on MAHARAJ's

person. The new Glock on PHERAI BOGEAJIS's floorboard had been obtained by

SILVA-RAMOS through a known source of firearms at a gun show on or about May

15, 2022.

One of the four kilograms of cocaine was tested by the Florida Department of

Law Enforcement and found to contain 995.47 grams of a substance containing a

detectible amount of cocaine, a Schedule II controlled substance. PHERAI

BOGEAJIS possessed a firearm and ammunition in the vehicle on May 16, 2022 in

part to protect drugs and drug proceeds.  The currency in PHERAI BOGEAJIS's possession on May 16, 2022, was drug proceeds.

In all of these conversations, PHERAI BOGEAJIS, knowingly joined with others in a shared and unlawful plan to possess with intent to distribute and to distribute controlled substances. This plan involved more than 40 grams of fentanyl. In addition, PHERAI BOGEAJIS possessed a firearm in furtherance of drug trafficking on May 16, 2022.